Opinion
 

 FUKUTO, Acting P.J.
 

 Appellant Fletcher Charles Gill appeals from the judgment entered following his conviction by jury of the crime of possession of a controlled substance (cocaine) (Health & Saf. Code, § 11350, subd. (a)). He contends that the trial court improperly coerced the jury into reaching a guilty verdict, and that the trial court erroneously denied him pretrial discovery pursuant to
 
 Pitchess
 
 v.
 
 Superior Court
 
 (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].
 

 Facts
 

 Viewed in accordance with the normal rules on appeal
 
 (People
 
 v.
 
 Ochoa
 
 (1993) 6 Cal.4th 1199 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence showed the following. On the morning of April 20, 1994, Officer Sean Hunt of the Long Beach Police Department and his partner Officer Salvador Solarzano were in the vicinity of 335 14th Street in the City of Long Beach investigating drug activity. Officer Hunt observed appellant run down a
 
 *746
 
 driveway of the location and into a nearby alley. Officer Hunt approached appellant and asked him “if he had any dope on him.” Appellant answered, “ No,” and stuck out his tongue for Officer Hunt to see. Officer Hunt found nothing in appellant’s mouth and asked if he could check appellant’s pockets for any narcotics. Appellant answered “check, check,” and Officer Hunt pulled open the pocket of the large military type jacket appellant was wearing and observed a cigarette lighter and a small object which Officer Hunt believed to be rock cocaine. Officer Hunt decided to arrest appellant and placed him in a standard twist lock.
 
 [1]
 
 As he did that, appellant reached across with his right hand into his left pocket and began to remove some items from his pocket. Appellant managed to throw two small objects to the ground and attempt to step on them. About this time, Officer Solarzano came to the location and appellant was taken to the ground and handcuffed. Officer Hunt then recovered the items tossed to the ground. (The items recovered from the ground and from appellant’s pocket were analyzed and found to contain cocaine.) Referring to the recovered items, appellant stated, “ ‘There’s no way you are going to be able to put that on me. It wasn’t in my pocket.’ ”
 

 Appellant testified that on the morning of his arrest, he saw two officers searching a Black male suspect who was on the ground. At that time another person approached appellant and offered to sell him a green coat. Appellant purchased the coat for $5. Before appellant took possession of the coat, appellant had the person empty the pockets of the coat. When appellant received the coat, the pockets were empty.
 

 After receiving the coat, appellant stated he saw a group of people in the alley and, being curious, he headed in their direction. After he took a few steps, appellant was approached by Officer Hunt. Officer Hunt asked appellant what he had bought up there (apparently referring to the house at 335 14th Street). Appellant responded he did not buy anything. Officer Hunt asked appellant to stick out his tongue, which appellant did. Officer Hunt then told appellant to give him the coat, searched it and then searched appellant. While searching appellant, Officer Hunt pushed appellant’s face into a garage door, gashing his cheek. At that time Officer Solarzano came running over and said appellant had dropped two small white objects. Officer Solarzano recovered the objects approximately 20 feet from where appellant was standing. Appellant was arrested and handcuffed. The handcuffs were very tight and the pain was excruciating. Appellant testified he did not possess cocaine.
 

 
 *747
 
 As initially noted, the jury convicted appellant of possession of cocaine. After suspending proceedings, the court placed appellant on 3 years’ probation with various conditions including serving 27 days in the county jail with credit for 27 days already served.
 

 Discussion
 

 Jury Coercion
 

 Jury deliberations in this case began on the afternoon of September 11, 1996. The next day at approximately 11:40 a.m., the jury requested a readback of the testimony of Officers Hunt and Solarzano, relating to attempts to restrain appellant. That was done. About one-half hour later, the jury sent a note to the court which stated, “We are unable to arrive at a verdict. What do we do []now ?” The jury was called into the courtroom and the court first commented that the jury had “spent very little time [deliberating]” and that the court thought the jury should “spend more time on it.” The court then asked for the numerical division. The foreperson reported it was 11 to 1. The court had the jury resume deliberation, after giving the following supplemental instruction: “Although the verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellows, yet in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other. [‘JQ Remember that you are not partisans or advocates in this matter; you are impartial judges of the facts. Each of you must consider the evidence for the purpose of reaching a verdict, if you can do so. Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors, and with this view it is your duty to decide the case, if you can conscientiously do so. [*][] In conferring together, you ought to pay proper respect to each others’ opinions and listen - - [^Q Let me read that again. [IQ In conferring together, you ought to pay proper respect to each others’ opinions and listen with a disposition to be convinced to each other’s arguments.”
 
 [2]
 

 After the jury had deliberated for an additional hour, the court excused a juror for economic hardship and replaced her with an alternate juror. Before substituting in the alternate juror, the court asked the foreperson whether he believed that any further deliberations would “possibly result in a verdict . . . .” The foreperson responded that he “[felt] there [was] some possibility, yes.”
 

 
 *748
 
 The jury was excused until the following day, when it resumed deliberations at 8:30 a.m. After an additional one and one-half hours, the jury reached a guilty verdict.
 

 Appellant contends the court improperly coerced the jury into reaching a guilty verdict in various ways. First, appellant contends the court improperly “chided” the jury for spending very little time on the case, thus pressuring the jury to reach a verdict. This contention is without merit. At the time the jury advised the court that it was unable to reach a verdict, it had, in fact, spent little time deliberating, as deliberations go (only “a half hour or so” following the readback). The court was acting within its discretion in ordering the jury to keep deliberating. There was no error on the court’s part in advising the jury that it had not deliberated very long.
 

 Second, appellant contends the court’s inquiry into the numerical division of the jury was coercive. Appellant points out that in federal courts, such an inquiry alone requires reversal. This rule, however, is not a matter of federal constitutional law
 
 (Lowenfield
 
 v.
 
 Phelps, supra,
 
 484 U.S. at pp. 239-240 [108 S.Ct. at pp. 551-552]); it is rather a rule established by the United States Supreme Court as an exercise of its supervisory powers over federal courts.
 
 (Brasfield
 
 v.
 
 United States
 
 (1926) 272 U.S. 448, 450 [47 S.Ct. 135, 136, 71 L.Ed. 345].) California courts do allow the practice of inquiring into the jury’s numerical division, without finding out how many are for conviction and how many for acquittal.
 
 (People
 
 v.
 
 Johnson
 
 (1992) 3 Cal.4th 1183, 1254 [14 Cal.Rptr.2d 702, 842 P.2d 1].) Moreover, from the jury’s standpoint, the court’s learning of the numerical division of the jury would not have had any coercive effect on the jury. The court told the jury that it should spend more time deliberating before it learned of the jury’s numerical division.
 

 Third, appellant complains of the manner in which the court instructed the jury to continue deliberations. Because the court made a false start in reading the final paragraph, appellant argues the court emphasized that jurors should listen to each other, rather than adhere to their own beliefs. This contention also lacks merit. The court denied that it emphasized certain parts of the instruction. The court explained that one of the reasons he gave each individual juror a copy of the supplemental instruction was not to place emphasis on any particular words. We find the court’s explanation to be credible. There was no undue emphasis directing the jurors to listen to each other over adhering to their own beliefs.
 

 Finally, appellant complains that the court’s asking the jury foreperson whether he believed the jury would be able to reach a verdict was coercive. We do not agree. Such inquiry was natural and not unusual given the
 
 *749
 
 apparent deadlocked position of the jury. Such inquiry was necessary to determine whether the court should require the jury to continue deliberations. We do not consider it coercive.
 

 Discovery Motion
 

 Prior to trial, appellant filed a motion seeking discovery of citizens’ complaints against, or official investigations of, Officer Hunt. Appellant sought information pertaining to Officer Hunt’s acts of aggressive behavior, violence, excessive force, or attempted violence. Without conducting an in camera inspection of the requested documents, the trial court denied appellant’s discovery request.
 
 [3]
 
 Appellant contends this was reversible error.
 

 Under Penal Code section 832.7, subdivision (a), peace officer personnel records, including records of complaints against an officer for excessive force, “are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to [s]ections 1043 and 1046 of the Evidence Code.” Evidence Code section 1043 requires that a written motion be filed with the trial court with notice to the appropriate police agency. The written motion must describe the records sought and must include “[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation . . . .” (Evid. Code, § 1043, subd. (b)(3).) Once there has been compliance with Evidence Code section 1043, the trial court must conduct an in camera inspection of the records in order to determine their relevance to the subject matter involved in the pending proceeding.
 

 A motion for discovery of peace officer personnel records is “addressed solely to the sound discretion of the trial court.”
 
 (Pitchess
 
 v.
 
 Superior Court, supra,
 
 11 Cal.3d at p. 535.) A review of the lower court’s ruling is subject to an abuse of discretion standard.
 

 In
 
 People
 
 v.
 
 Memro
 
 (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446]
 
 (Memro),
 
 the Supreme Court considered the issue of materiality for discovery of police records. In that case, the defendant alleged his confession to a murder was coerced. He sought discovery of records of prior complaints of violence against the interrogating officers. Applying the materiality standard of Evidence Code section 1043, the Supreme Court held
 
 *750
 
 the defendant had established good cause for the information requested. (38 Cal.3d at p. 682.) The court held that discovery might lead to admissible evidence that the interrogating officers had a “habit or custom” of obtaining confessions by use of excessive force. “Discovery might lead to evidence of habit or custom admissible to show that a person acted in conformity with that habit or custom on a given occasion. (Evid. Code, § 1105.) ‘Habit’ or ‘custom’ is often established by evidence of repeated instances of similar conduct. (See, e.g.,
 
 Dicau
 
 v.
 
 Tamayose
 
 (1982) 131 Cal.App.3d 780, 793-796 . . . .)”
 
 (Memro, supra,
 
 38 Cal.3d at p. 681, fn. omitted.)
 

 We are satisfied that appellant has demonstrated the materiality of the information that he requested. Appellant was charged with possession of cocaine. Through his counsel, appellant asserted that “[i]t will be a defense in this matter that the alleged contraband was placed on [appellant] by [Officer Hunt] to cover up for his use of excessive force and that the officer has [a] pattern of fabricating probable cause in dope cases.” Toward this end, appellant’s counsel enlarged the discovery request to include prior complaints against Officer Hunt of fabrication of probable cause and planting of evidence to cover up his use of excessive force. Any history of complaints of similar misconduct in Officer Hunt’s personnel file could lead to admissible evidence of “habit or custom,” which could aid appellant’s defense to the charge. An accused is entitled to any “ ‘ “pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence,
 
 if it appears reasonable that such knowledge will assist him in preparing his defense. . .
 
 .” ’ ”
 
 (People
 
 v.
 
 Ainsworth
 
 (1990) 217 Cal.App.3d 247, 250-251 [266 Cal.Rptr. 175], original italics.) We hold that appellant has demonstrated good cause for the requested discovery and that the trial court abused its discretion by summarily denying the discovery motion. The trial court should have conducted an in camera hearing to determine the presence of any discoverable material in Officer Hunt’s personnel file.
 

 Having concluded that the trial court erred in not conducting an in camera hearing to determine the existence of any discoverable information, we must decide the consequence of the ruling. “It is settled that an accused must demonstrate that prejudice resulted from a trial court’s error in denying discovery. [Citations.]”
 
 (Memro, supra,
 
 38 Cal.3d at p. 684 [In
 
 Memro,
 
 our Supreme Court made a factual finding, that under the facts of that case, it was reasonably probable that discovery would have led to admissible evidence of sufficient weight to affect the trial court’s determination of the voluntariness of the confession, and thus, ordered a reversal of the judgment.].)
 

 In this case we are unable to say that it is reasonably probable that discovery would have led to admissible evidence of sufficient weight to be
 
 *751
 
 helpful to appellant in his defense. There may not have been any prior complaints against Officer Hunt of the type of conduct specified in appellant’s discovery request. If so, access to Officer Hunt’s personnel file would not have led to any admissible evidence usable by appellant to affect the outcome of his trial, and summary denial of appellant’s discovery request would not have been prejudicial.
 

 We find appropriate to this case the following quote from
 
 People
 
 v.
 
 Coyer
 
 (1983) 142 Cal.App.3d 839 [191 Cal.Rptr. 376]: “ ‘In its disposition of a criminal case the appellate court is not limited to the more common options of affirmance, reversal or modification of the judgment or order appealed from. The court “may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances.” (Pen. Code, § 1260[.]).... But when the trial is free of prejudicial error and the appeal prevails on a challenge which establishes only the existence of an unresolved question which may or may not vitiate the judgment, appellate courts have, in several instances, directed the trial court to take evidence, resolve the pending question, and take further proceedings giving effect to the determination thus made.’ [Citations.]”
 
 (Id.
 
 at pp. 844-845.) As suggested by the quoted case, we order the following disposition.
 

 Disposition
 

 The judgment is reversed with directions to the trial court to conduct an in camera hearing on appellant’s discovery motion consistent with this opinion. If the in camera hearing reveals no discoverable information in Officer Hunt’s personnel file which would lead to admissible evidence helpful to appellant’s defense, the trial court shall reinstate the original judgment and sentence. If the in camera hearing reveals discoverable information which could lead to admissible evidence helpful to appellant in defense of the charge, the trial court shall grant the requested discovery and order a new trial.
 

 Nott, J., and Zebrowski, J., concurred.
 

 A petition for a rehearing was denied January 6, 1998, and respondent’s petition for review by the Supreme Court wad denied March 18, 1998.
 

 [1]
 

 Officer Hunt explained the twist lock as twisting the arm of the arrestee to gain control over the person before handcuffing.
 

 [2]
 

 This instruction was patterned after an instruction approved by the United States Supreme Court in
 
 Lowenfield
 
 v.
 
 Phelps
 
 (1988) 484 U.S. 231 [108 S.Ct. 546, 98 L.Ed.2d 568]. Appellant makes no issue as to the propriety of the instruction.
 

 [3]
 

 Appellant’s discovery motion was heard and denied on two occasions. On July 31, 1996, 19 days before the original trial date of August 19, 1996, appellant filed his original written discovery motion. It was heard and denied by Judge Hay based on insufficiency of the affidavit supporting the motion. Shortly before trial, appellant filed another discovery motion. This motion was heard and denied by Judge Pierce on September 4, 1996. Appellant challenges this ruling.