107 Cal.Rptr.2d 245 (2001)
89 Cal.App.4th 356
Maurice ALFORD et al., Petitioners,
v.
The SUPERIOR COURT of San Diego County, Respondent;
The People et al., Real Parties in Interest.
No. D036869.
Court of Appeal, Fourth District, Division One.
May 22, 2001.
As Modified on Denial of Rehearing May 31, 2001.
Review Granted August 8, 2001.
*248 Steven G. Carroll, Deputy Public Defender, Matthew Braner, Gary Gibson, Courtney Cutter, Deputy Public Defenders, for petitioner Maurice Alford.
Craig J. Leff for petitioner Donny Love.
No appearance for Respondent.
Casey Gwinn, City Attorney and Carol A. Trujillo, Deputy City Attorney, for real party in interest City of San Diego.
Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for real party in interest People of the State of California.
HUFFMAN, Acting P.J.
In this criminal action, defendant Maurice Alford, joined by codefendant Donny Durham, aka Donny Love (Love), petitions for a writ of mandate directing respondent Superior Court of San Diego County (the court) to vacate its November 15, 2000 order denying disclosure of two citizen complainants' names, addresses and telephone numbers regarding complaints of dishonesty of one of the arresting San Diego police officers, and to reissue its November 6, 2000 order requiring disclosure of such information. The court had originally ordered such information released to the defense after finding good cause shown and conducting the required in camera hearing for a "Pitchess motion." [1] (City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 81-84, 260 Cal. Rptr. 520, 776 P.2d 222 (City of Santa Cruz).) After ruling the City of San Diego's (City's) proposed protective order sought on behalf of the San Diego Police Department and its individual officers was too broad and an effective protective order could not be issued, the court reconsidered and reversed the November 6, 2000 decision for disclosure.
Alford and Love argue the court abused its discretion in reversing itself by assuming the difficulty in fashioning an appropriate protective order under Evidence Code section 1045 was part of the balancing process to determine whether evidence relevant to the defense should be disclosed and in assuming the standards for showing good cause set out in City of San Jose v. Superior Court (1998) 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 (City of San Jose) and People v. Hustead (1999) 74 Cal.App.4th 410, 87 Cal.Rptr.2d 875 (Hustead), which the court had initially followed, were irreconcilable.
The People, represented by the District Attorney for the County of San Diego, agree the defendants made an adequate showing of good cause for disclosure for the in camera review of the police officer records, the court erred in denying discovery after that review because of the difficulty in fashioning an appropriate protective order, and that no conflict exists *249 between the standards used in City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 and Hustead, supra, 74 Cal.App.4th 410, 87 Cal.Rptr.2d 875. The People also contend the court erred in denying the People standing to respond to the Pitchess motion and in determining no appropriate protective order could be made.
City contends the court did not abuse its discretion in ruling on the reconsidered Pitchess motion, and posits that if good cause had been shown, the statutory scheme for the release of police officer's records requires a protective order that prohibits disclosure of information developed after an in camera review except in the case for which discovery is sought.
We shall conclude: (1) the People have standing to appear at a Pitchess motion; (2) defendants made a showing of good cause for disclosure of information in police officer records; (3) there is no conflict between the standards expressed in City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 and Hustead, supra, 74 Cal.App.4th 410, 87 Cal.Rptr.2d 875; and (4) the court abused its discretion in both finding no effective protective order could be fashioned in this case, and in using such fact to rebalance the interests involved in granting discovery under the statutory scheme for the release of information in police officer records.
Accordingly, we grant the petition, ordering the court to set aside its November 15, 2000 order, to reissue its November 6, 2000 order, and to fashion a protective order consistent with the views expressed in this opinion.

PROCEDURAL AND FACTUAL BACKGROUND

A, The Police Reports Regarding the Arrests
Alford and Love were arrested by two San Diego police officers on July 9, 2000, and subsequently charged with transporting and possessing controlled substances for sale, specifically cocaine base. The narrative to the police report filed July 10, 2000, by Officer Paul Phillips included among other things, information that the car driven by Love, with Alford as his passenger, "pull[ed] out unsafely into [the officers' car's] right of way" and that the officers then pulled behind Love's car to talk with him and his passenger as they parked. The report also noted that when Phillips asked Love to talk, Love agreed to do so, and told Phillips he had been driving to the store to get some baby formula. Phillips then talked with Alford, while Officer Eric Morales spoke with Love.
Phillips's report related the details of his encounter with Alford, the arrival of backup officers, Love's mention "he had done federal time for gun violations[,]" and the details of the subsequent search and arrest of Alford before further questioning Love.[2] *250 At such point Phillips did not know what, if any, Love's involvement was in the narcotics found on Alford. After Phillips temporarily handcuffed Love and asked him to sit in the police car while the officers searched his car, Love purportedly said, "`OK but I want to tell you something about what's in the car.' Love then told me, `I work for the City of San Diego and I ain't going down for something that ain't mine.[`] He handed me a bag and [said, `]I don't know what's in it[.]' He told me the bag was in the car and that Alford had better come forward and tell the tru[ ]th about the bag." In response to further questions, Love told Phillips he did not have anything on him illegal and "`You can search me[.]'" After doing so, and finding contraband on Love's person as well as in the car, Love told Phillips "he used to hang with the Lincoln Park blood gang and had a green bandana in his pocket[.]"
Officer Morales's report provided further details regarding the contraband found in the search of the car, and additionally related statements made during taped interviews of the two defendants who purportedly agreed to talk with Morales at police headquarters.

B. The Initial Pitchess Motion
In addition to Love filing a pretrial motion to suppress evidence based on an alleged unlawful detention, patdown and search, in which Alford filed a written joinder, Love also filed a motion for discovery of information in police files and records under Pitchess. The points and authorities in support of the motion identified the items sought to be discovered, including the "[n]ames, addresses and phone numbers of all persons who have complained to the San Diego Police Department about [`excessive force, aggressive conduct, unnecessary violence, unnecessary force, racist remarks, false arrest, false statements in reports, false claims of probable cause, or any other evidence of or complaints of dishonestly'] by [Phillips and Morales.]" Love's attorney's declaration in support of the motion stated on "information and belief that Love and Alford were getting out of the car when the officers stopped Love from entering the store, thus the officers lied about the near collision being the cause of the detention. Counsel also represented that the officers lied about Love agreeing to speak with them. Morales lied when he said Alford's interview was not recorded; and Phillips lied when he said Love had told him he had done federal time for gun violations, when he said the patdown searches were conducted for officer safety, when he said Love consented to a search of his person and car, and when he said Love voluntarily made certain statements regarding gang ties after his arrest. Essentially, counsel submitted there were "two different accounts of what occurred on July 9, 2000," Love's version of the events[3] and *251 the officers' version in their reports. He represented that because Love planned to defend himself with allegations of police misconduct, evidence of "false or inaccurate police reports, false claims of probable cause and reasonable suspicion and racial bias" would be admissible at trial to show the officers conformed with their character, habit and custom on the day of Love's arrest. He also asserted that because credibility of the officers would be challenged for the motion and at trial, evidence of prior acts of dishonesty by the officers were discoverable. He argued good cause for discovery in the police records of Phillips and Morales was established under numerous authorities, including Hustead, supra, 74 Cal.App.4th 410, 87 Cal.Rptr.2d 875.
City filed opposition to the Pitchess motion, asserting various procedural errors, the lack of a police report and specific declaration, and arguing no "plausible justification" (People v. Luttenberger (1990) 50 Cal.3d 1, 265 Cal.Rptr. 690, 784 P.2d 633) or good cause showing (City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal. Rptr.2d 624) had been made for discovery of the sought after information in the police personnel records. Alternatively, City posited it would seek a protective order if the court determined Love had shown good cause for discovery and an in camera inspection revealed anything relevant.
At the November 6, 2000 Pitchess hearing, the court decided to use a "practical approach" due to the closeness of trial, permitting Alford to orally join in the discovery motion and Love to cure the procedural omission of the police reports for the motion by distributing them to the parties and court at that time.[4] After hearing some argument regarding the matter, the court found a marginal showing had been made for it to "look at the files" for information that related to credibility, but not excessive force or "racial bias, except as that might [also] relate to credibility."
After the in camera review of Phillips's and Morales's personnel files, the trial judge again noted on the record it had found an adequate showing of good cause for discovery had been made under the holding of Hustead, and stated that, "[I]n reviewing the files, ... only for credibility ... there were two items which I found that I believe I am required to have disclosed and make discoverable by both the prosecution and the defense. [¶] I am *252 ordering the police department to make available the names, addresses and phone numbers of the percipient witnesses. [¶] In doing so, I am finding that the court, in exercising its discretion, must follow a balancing that is different than what we would do if it was an issue as to whether the information would be admissible in trial." The court explained it was unclear on the extent of what was discoverable "as it relates to credibility[,]" but was following the Hustead decision even though it seemed to be opening "Pandora's box. ..." Although the court was concerned that the type of information being turned over "is the type of information we're going to find in many, many, many police officer's files[,]" it ordered the police department to turn over the information, but stayed the order for five days so the City could pursue a writ. The court clarified that the information ordered released would be turned over to both the prosecution and the defendants' attorneys.

C. Protective Order Motion
On the chance it might not file a writ, City requested the court review a protective order which it was preparing before releasing the ordered information.[5] The matter was set for hearing on November 15, 2000, the day the stay of the discovery order was set to expire. City and defendants filed points and authorities in support of their respective positions. City's basic premise was that a protective order was necessary to restrict the use of the discoverable information for use only in the defendants' defenses in this case in order to protect the privacy interests of both the officers involved here and the citizen complainants whose names, addresses and telephone numbers were found relevant to such defenses at the in camera hearing. Defendants argued the provisions in the protective order limiting the information for use only in this case were overbroad and should be stricken because the plain language of Evidence Code section 1045, subdivision (e) provided merely that "the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." Defendants contended the lack of language in such subdivision limiting use of the material to the specific court proceeding evidenced the Legislature's intent not to impose a case specific limit on such disclosures unless the movant for a protective order made a showing of good cause that additional dissemination would subject the officer or agency to "unnecessary annoyance, embarrassment or oppression." Defendants posited in general that a protective order could not prohibit reasonable defense uses of Pitchess information, could not restrict the use of *253 disclosed Brady[6] material from one public defender case to another and could not prohibit the public defender from disclosing such Pitchess information to his deputies.
After hearing argument from City and the defendants on the scope of a protective order,[7] the court basically agreed with defendants that "it's unrealistic to issue a protective order that would limit [the public defenders' o]ffice to only using the information in this case[,]" but then explained that it had a "dilemma" regarding its initial finding of good cause because it had "always assume[d]" in the balancing it did that "there could be an effective protective order." The trial judge then ruled in three parts:
"Number one, I'm going to go back and use the other standard [in City of San Jose] and find that the moving papers are insufficient on their face. [¶] ... [¶] Second of all, if the [Hustead] decision is the legal theory that we are to use, then I would do the in camera hearing... . [¶] ... [¶] ... I am going to then find that my evaluation of what was in the file... [i]n balancing all of the interests which have been discussed, I would not release the information. [¶] I'm also going to find that the [city's] proposed protective order would not be a valid order."[8]
The court said that even if it used the standard in Hustead, it would change its evaluation because of the fact it could not issue an effective protective order and such "does affect [the court's] balancing."

D. The Writ Petition
Alford filed the instant petition for mandamus relief on November 27, 2000. Love joined in the petition the next day. On December 7, 2000, we directed the San Diego County Clerk to transmit to this court a sealed reporter's transcript of the November 6, 2000 in camera hearing. On December 12, 2000, we ordered all proceedings in the trial court stayed and directed the People and City, the real parties in interest, to file informal responses to the petition. After reviewing the matter further, we issued an order to show cause (OSC) why the relief requested should not be granted, specifying that "[a]bsent objection by counsel on or before January 9, 2001, the briefs currently on file shall be deemed the response and reply to the [OSC, and o]ral argument will be deemed waived unless requested on or before January 12, 2001." No such objections or requests have been received.

DISCUSSION
Before turning to the statutory background for a Pitchess motion and our analysis of the contentions in light of such law, we note that writ review is appropriate because Alford and Love have sought relief from a discovery order which could undermine their right to present a defense because appellate remedies are not adequate to cure the erroneous denial of disclosure of information, and general guidelines appear to be necessary for the lower courts. (People v. Superior Court (Mouchaourab) (2000) 78 Cal.App.4th 403, 413, 92 Cal.Rptr.2d 829.) In reviewing the discovery order, we apply the abuse of discretion *254 standard, "keeping in mind that `[t]rial courts are granted wide discretion when ruling on motions to discover police officer personnel records.' [Citation.]" (CHP, supra, 84 Cal.App.4th at p. 1019, 101 Cal. Rptr.2d 379.)

A. The Statutory Background
It is well settled that, "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as `Pitchess motions' [citation] through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (City of Santa Cruz, supra, 49 Cal.3d 74, 81, 260 Cal.Rptr. 520, 776 P.2d 222.) These Penal Code sections define "personnel records" and provide they are "confidential," but subject to discovery pursuant to certain procedures set out in the Evidence Code. (Id. at pp. 81-82, 260 Cal.Rptr. 520, 776 P.2d 222.) Together, Evidence Code sections 1043 and 1045 set forth the specific procedures for discovery of such personnel records. In adopting such statutory scheme, the Legislature "`not only reaffirmed but expanded' the principles of criminal discovery articulated" in Pitchess. (City of Santa Cruz, supra, 49 Cal.3d at p. 84, 260 Cal.Rptr. 520, 776 P.2d 222.)
As the court in CHP, supra, 84 Cal.App.4th 1010, 101 Cal.Rptr.2d 379 recently noted, Evidence Code sections 1043 and 1045 "establish a two-step procedure for discovery of peace officer personnel records by a criminal defendant. First, section 1043 requires the defendant to file a written motion for discovery of peace officer personnel records. The motion must include `[a] description of the type of records or information sought,' supported by `affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records.' [Citations.] [¶] The second step is reached after [a] defendant makes a showing of good cause for the discovery. [Citation.]" (CHP, supra, 84 Cal.App.4th at pp. 1019-1020, 101 Cal.Rptr.2d 379.)
That second step is an in camera "examination of the records to determine whether they have any relevance to the issues presented in the current proceedings." (City of San Jose, supra, 67 Cal. App.4th at p. 1143, 79 Cal.Rptr.2d 624.) In addition to specific enumerated categories of exclusion of information,[9] Evidence Code section 1045 provides "general criteria to guide the court's determination [of relevance for disclosure] and insure that the privacy interests of the officers subject to the motion are protected."[10] (City of *255 Santa Cruz, supra, 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222.) Thus, it has been said that "[t]he relatively low threshold for discovery embodied in [Evidence Code] section 1043 is offset, in turn, by [Evidence Code] section 1045's protective provisions ...." (City of Santa Cruz, supra, 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222.) Such "legislation was intended to balance the need of criminal defendants to relevant information and the legitimate concerns for confidentiality of police personnel records."[11] (People v. Breaux (1991) 1 Cal.4th 281, 312, 3 Cal. Rptr.2d 81, 821 P.2d 585.)
With respect to the "materiality" element of Evidence Code section 1043, subdivision (b)'s "good cause" requirement, the Supreme Court has observed that "a criminal defendant's right to discovery is based on the `fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' [Citation.] Pitchess made it clear that `an accused ... may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial.' [Citation.] In contrast to the detailed showing required by some civil discovery statutes [citation], the requisite showing in a criminal matter 'may be satisfied by general allegations which establish some cause for discovery' other than a mere desire for all information in the possession of the prosecution. [Citation.] The information sought must, however, be `requested with adequate specificity to preclude the possibility that defendant is engaging in a "fishing expedition."'" (City of Santa Cruz, supra, 49 Cal.3d at pp. 84-85, 260 Cal.Rptr. 520, 776 P.2d 222.)
The high court clarified that a showing of "good cause" under Evidence Code sections 1043 and 1045 requires a defendant "to demonstrate the relevance of the requested information by providing a `specific factual scenario' which establishes a 'plausible factual foundation' for the allegations of officer misconduct committed in connection with defendant. [Citations.]" (CHP, supra, 84 Cal.App.4th at p. 1020, 101 Cal.Rptr.2d 379.) The court in City of Santa Cruz found such "plausible factual foundation" established by a reading of the police reports in conjunction with counsel's declaration,[12] which alleged the specific factual scenario the officers there used excessive force during the defendant's arrest, described instances of unreasonable *256 force used during the arrest, claimed the officers' character, habits, customs and credibility would be material issues at trial, and opined other excessive force complaints may have been filed and investigated against those officers which would show or lead to evidence showing they tended to use excessive force in making arrests.[13] (City of Santa Cruz, supra, 49 Cal.3d at pp. 85-86, 260 Cal.Rptr. 520, 776 P.2d 222.)
Applying the reasoning of City of Santa Cruz, supra, 49 Cal.3d 74, 260 Cal.Rptr. 520, 776 P.2d 222 in Hustead, a case involving felony evading a police officer prosecution, the appellate court found the defendant had made an adequate showing of good cause and materiality for discovery of prior complaints of dishonesty of the arresting officer.[14] (Hustead, supra, 74 Cal.App.4th at pp. 416-18, 87 Cal.Rptr.2d 875.) There, defense counsel had alleged the officer had made material misstatements with respect to his observations of Hustead's driving, the officer had fabricated his dangerous driving, and the officer's character, habits, customs and credibility would be a substantial issue at trial. (Id. at pp. 416-17, 87 Cal.Rptr.2d 875.) After generally noting discovery is proper when a defendant or his counsel states under oath facts showing an officer's truthfulness will be a crucial issue at trial, the court in Hustead explained discovery was proper in that case because "the police report indicated that [defendant] drove in a dangerous manner[, while defendant's] counsel's declaration asserted that defendant did not drive in the manner suggested in the report, which led to a reasonable inference that the officer may not have been truthful. Therefore, it [became] relevant whether the officers [had] been accused of falsifying reports in the past." (Id. at p. 418, 87 Cal.Rptr.2d 875.)
Contrary determinations using the same standard enunciated in City of Santa Cruz, supra, 49 Cal.3d 74, 260 Cal.Rptr. 520, 776 P.2d 222 and used in Hustead, supra, 74 Cal.App.4th 410, 87 Cal.Rptr.2d 875, were reached in City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 and CHP, supra, 84 Cal.App.4th 1010, 101 Cal. Rptr.2d 379. In City of San Jose, the court found the defendant had failed to show good cause for discovery because he "merely made conclusory statements asserting officer misconduct (`"voluntary consent to enter was not in fact obtained by the officers"`) without providing a specific factual scenario for the alleged misconduct (`the specifics of the allegedly improper police conduct')." (CHP, supra, 84 Cal.App.4th at p. 1020, 101 Cal.Rptr.2d 379, quoting City of San Jose, supra, 67 Cal.App.4th at pp. 1139, 1149, 79 Cal. Rptr.2d 624.) The court concluded that without such specific factual scenario recited in the defense declaration, "the trial court could not determine whether `the discovery or disclosure sought' was material to `the subject matter involved in the pending litigation.'" (City of San Jose, supra, 67 Cal.App.4th at p. 1149, 79 Cal. Rptr.2d 624.)
In essence, City of Santa Cruz, supra, 49 Cal.3d 74, 260 Cal.Rptr. 520, 776 P.2d 222 and the above authorities following *257 its standard establish that whether a motion to discover police personnel records has been supported by an affidavit sufficient to show good cause and materiality of the requested information to the subject matter involved in the pending litigation is a factual determination made by the court in its sound discretion. (Pitchess, supra, 11 Cal.3d at p. 535, 113 Cal.Rptr. 897, 522 P.2d 305.) To reiterate, the threshold showing the defense must make of good cause and materiality to justify an in camera review of the records is "relatively low" or "relatively relaxed." (City of Santa Cruz, supra, 49 Cal.3d at pp. 83-84, 260 Cal.Rptr. 520, 776 P.2d 222.) Once both have been shown, "[a]n accused is entitled to any `"`pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. ...'"' [Citation.]" (People v. Gill (1997) 60 Cal.App.4th 743, 750, 70 Cal.Rptr.2d 369, italics in original.)

B. Application of the Law to This Case
In applying the above principles to the instant case, as the defendants and People contend, and the court initially found, we find the defendants have established good cause for the information requested. Love and Alford were charged with drug offenses stemming from an encounter with Officers Phillips and Morales. As noted above, defense counsels' declarations alleged Officers Phillips and Morales lied in their reports regarding the incidents involving Love and Alford.[15] Love and Alford also presented in their motion papers a specific factual scenario of the encounter resulting in the arrest, search and subsequent interviews different than that contained in the officers' reports. They also averred information from Phillips's and Morales's personnel records relating to prior acts of dishonesty involved in "false or inaccurate police reports, false claims of probable cause and reasonable suspicion and racial bias" was sought to show the respective officer's character, habit and custom on the day of the encounter with them and their credibility,[16] and alleged they planned to defend themselves in a pretrial search and seizure motion and at trial with allegations of such police misconduct. Thus, the declarations established a "plausible factual foundation" for allegations Phillips and Morales were untruthful in their report of the encounter, put the court on notice the officers' credibility would likely be an issue for the motions and at trial, and articulated a valid theory of how the requested information might be admissible.[17] (City of Santa *258 Cruz, supra, 49 Cal.3d at p. 86, 260 Cal. Rptr. 520, 776 P.2d 222.) On this record Love and Alford adequately met the "relatively low" threshold showing of good cause for an in camera hearing. (Evid. Code, § 1043, subd. (b)(3); City of Santa Cruz, supra, 49 Cal.3d at pp. 85-86, 260 Cal.Rptr. 520, 776 P.2d 222; People v. Memro (1985) 38 Cal.3d 658, 682-683, 214 Cal.Rptr. 832, 700 P.2d 446; Hustead, supra, 74 Cal.App.4th at pp. 416-418, 87 Cal.Rptr.2d 875; People v. Gill, supra, 60 Cal.App.4th at p. 750, 70 Cal.Rptr.2d 369; Larry E. v. Superior Court (1987) 194 Cal.App.3d 25, 29-33, 239 Cal.Rptr. 264.)
As earlier mentioned, the trial court initially found such good cause shown and conducted an in camera hearing. After identifying two incidents involving Officer Phillips that could possibly lead to admissible evidence which might reasonably show his dishonesty during the contact, arrest and search of two complainants, the court balanced the defendants' right to defend themselves with such relevant credibility evidence against the officer's right to confidentiality in his records and determined that only the names, addresses and telephone numbers of the two complainants should be turned over to the People and the defendants. Our review of the sealed transcripts of the in camera hearing reveal the court correctly determined the two incidents involved sufficiently similar conduct from which admissible evidence to show that Phillips was untruthful regarding his contact with the two complainants was relevant to the defendants' defenses. However, the court reversed its decision after it agreed with the defendants that the protective order sought by City for the information was overbroad and it was unable to fashion an appropriate protective order. Although the court may have had the authority to reconsider its earlier discovery order (see People v. Castello (1998) 65 Cal.App.4th 1242, 1246-1250, 77 Cal. Rptr.2d 314), in using the difficulty of fashioning an appropriate protective order to outweigh the defendants' right to information that might be relevant to their defense, the court abused its discretion.
As we discuss below, the court not only erred in finding the question of a protective order factored in the balancing of the competing interests between the peace officer's claim to confidentiality and the defendants' interest in all information pertinent to their respective defenses, it also erred in assuming Hustead, supra, 74 Cal. App.4th 410, 87 Cal.Rptr.2d 875 and City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 provided different standards for its decision, in denying the People a say at the Pitchess motion, and in finding no effective protective order could be fashioned in this case.

C. Hustead versus City of San Jose
The court's concern about a conflict in the standards used to analyze good cause and relevancy in Hustead, supra, 74 Cal. App.4th 410, 87 Cal.Rptr.2d 875 and City of San Jose, supra, 67 Cal.App.4th 1135, 79 Cal.Rptr.2d 624 is unfounded. As we set out above, the courts in both those cases, as well as the court in CHP, supra, 84 Cal.App.4th 1010, 101 Cal.Rptr.2d 379 used the standard which was enunciated by our high court in City of Santa Cruz, supra, 49 Cal.3d 74, 260 Cal.Rptr. 520, 776 P.2d 222. Although Hustead and City of San Jose reached different results, such determination depended solely on the specific factual showing in each case. We thus believe the trial court misconstrued the difference between the standard it was to use and the determination of whether a sufficient factual context was presented by *259 the declarations before it. In its reconsideration of the discovery motion, the court stated that using the standard in City of San Jose rendered the moving papers insufficient on their face, clarified such ruling was not procedural, and then precluded defendants from arguing the facts to show how they may have satisfied even what the court considered was a different standard than in its earlier ruling. The court's error in assuming a different standard was used in Hustead and City of San Jose regarding the release of information, its denial of argument on the factual differences between this case and City of San Jose, or CHP, and its consideration of the feasibility of protective orders regarding such release, all contributed to its abuse of discretion in reconsidering and ruling on defendants' motions.

D. Protective Orders for Material to Be Disclosed
To reiterate, Evidence Code sections 1043 through 1045 codify Pitchess by "`carefully balancing] two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense.' [Citation.] The legislation achieves this balance primarily through a procedure of in camera review, set forth in [Evidence Code] section 1045, subdivision (b), whereby the trial court can determine whether a police officer's personnel files contain any material relevant to the defense, with only a minimal breach in the confidentiality of that file." Jackson, supra, 13 Cal.4th at p. 1220, 56 Cal.Rptr.2d 49, 920 P.2d 1254.)
After the relevance of the material is determined, the court then turns to subdivisions (d) and (e) of Evidence Code section 1045, which provide additional protections for the confidentiality of police personnel records as part of the carefully balanced statutory scheme. (City of Santa Cruz, supra, 49 Cal.3d. at pp. 83-84, 260 Cal.Rptr. 520, 776 P.2d 222.) Subdivision (d) of such section provides that upon timely motion by the governmental agency having custody or control of the records sought or by the officer whose records are to be examined, the court may, in its discretion "upon good cause showing the necessity thereof, . . . make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." Subdivision (e) of the same section "mandates that in any case where disclosure is permitted, the court `shall ... order that the records disclosed or discovered shall not be used for any purpose other than a court proceeding pursuant to applicable law.' [Citation.]" (City of Santa Cruz, supra, 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222.)
Subdivision (d) of Evidence Code section 1045 thus provides the trial court with broad authority to fashion any protective order which justice requires upon a showing of good cause, while subdivision (e) of such section obligates it to order that the disclosed material "not be used for any purpose other than a court proceeding pursuant to applicable law." (Evid.Code, § 1045, subds. (d) and (e).) The court's earlier relevance determination, however, has no bearing on these protective order portions of the sequenced discovery procedure set out in Evidence Code section 1045. Conversely, the court's subsequent ruling regarding the pertinent protective order in any specific case, which is reached only after the court has already determined certain information should be disclosed, is not a factor that may affect that initial relevance determination made after the in camera review. The People agree with Love and Arnold that the court here erred in including the difficulties it was *260 having in fashioning such protective orders as a factor weighing against disclosure in this case. We concur in that assessment and conclude the trial court abused its discretion in reweighing its November 6, 2000 relevance ruling for disclosure by using its inability to fashion a valid protective order as part of the balancing equation.

E. Scope of Protective Orders
The court also erred in assuming it could not fashion a valid protective order in this case. As all parties concede, the trial court has broad discretion under subdivision (d) of Evidence Code section 1045 to issue a protective order upon a showing of good cause to protect the officer or agency from "unnecessary annoyance, embarrassment or oppression." And, as already noted, the court also has a mandatory duty to impose an order stating the discovered material may "not be used for any purpose other than a court proceeding pursuant to applicable law." (Evid.Code, § 1045, subd. (e).) The parties differed below as to the scope of such protective order based on the meaning of Evidence Code section 1045, subdivision (e)'s phrase "other than a court proceeding pursuant to applicable law." The defendants' position, with which the court agreed, was that once any deputy public defender gained confidential Pitchess material on a showing of good cause in a particular case, he or she is free to disseminate that information office-wide for use in any other case, criminal or civil, whether or not good cause exists in the other case. Although Love and Alford do not raise any issue in their petition regarding such matter, we address it because of the court's misconceptions about the scope of a valid protective order which may be issued under Evidence Code section 1045, and the petitioners were given the opportunity to reply to such issue, which was raised, and thus joined, by the real parties in interest in their responses. (See Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 178-180, 203 Cal.Rptr. 626, 681 P.2d 893.)
It has repeatedly been stressed that the protective order sections of Evidence Code section 1045 are part of an overall carefully balanced statutory scheme that declares police officer personnel records and any information obtained from such records confidential unless ordered disclosed pursuant to a motion and in camera hearing under Evidence Code sections 1043 and 1045. (Pen.Code, § 832.7, subd. (a); City of Santa Cruz, supra, 49 Cal.3d at pp. 81-83, 260 Cal.Rptr. 520, 776 P.2d 222.) Under such scheme, a defendant must convince a court that the information sought is material to his or her defense. A defendant does so by alleging facts in an appropriate declaration which are specific to the defendant's own case to show why earlier instances of police misconduct would be material to his or her defense. Because the disclosure of such information from police officer personnel records "[i]n any case" is prohibited "except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code[,]" it would be illogical to interpret, as defendants would have us do, the phrase "other than a court proceeding pursuant to applicable law" to mean that once information is released to one defendant, the information is free to be shared with any defendant and for use in any other court proceeding. (Pen.Code, § 832.7, subd. (a); City of Santa Cruz, supra, 49 Cal.3d at p. 81, fn. 3, 260 Cal. Rptr. 520, 776 P.2d 222.) To so interpret would completely destroy the carefully crafted statutory process by which Pitchess information is released.
Defendants simply read a portion of the statutory scheme in isolation. Relying on the fact that during the legislative review of Senate Bill 1065, introduced in 1981 to add subdivision (e) to Evidence Code section 1045, the legislators substituted proposed language limiting the use of Pitchess information to the proceeding identified in the discovery motion with the present *261 phrase limiting the discoverable information to "a court proceeding pursuant to applicable law," defendants argued such change evidenced the Legislature intended Pitchess information would lose its confidential nature once it had been released to any defendant under the statutory scheme.[18] Based on such assumption, defendants then maintained that the trial court could not issue a protective order that limited Pitchess information to use only in the case for which disclosure was sought.
However, without some definitive evidence of what the legislators meant by the change in the language, we are required under well established rules of statutory construction to examine the statute's relevant language in light of the whole statutory scheme of which it is a part to determine the legislator's intent "so as to effectuate the purpose of the law. [Citations.]" People v. Pieters (1991) 52 Cal.3d 894, 898-899, 276 Cal.Rptr. 918, 802 P.2d 420; In re Charles Bandmann (1958) 51 Cal.2d 388, 393, 333 P.2d 339.) In doing so, we "accord words their usual, ordinary, and common sense meaning based on the language the Legislature used and the evident purpose for which the statute was adopted." (In re Rojas (1979) 23 Cal.3d 152, 155, 151 Cal.Rptr. 649, 588 P.2d 789.) In construing any particular provision of a statute, we presume the Legislature was aware of existing laws when it passes a statute or subdivision, and "to have enacted the new statute in light thereof." (People v. Hernandez (1988) 46 Cal.3d 194, 201, 249 Cal.Rptr. 850, 757 P.2d 1013, disapproved on another point in People v. King (1993) 5 Cal.4th 59, 78, fn. 5, 19 Cal.Rptr.2d 233, 851 P.2d 27.) "[W]e do not construe statutes [or their subdivisions] in isolation, but rather read every statute [and subdivision] `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (People v. Pieters, supra, 52 Cal.3d at p. 899, 276 Cal.Rptr. 918, 802 P.2d 420.)
Applying such rules here, we believe that portion of the phrase in question, "pursuant to applicable law," modifies the words "a court proceeding," so that the complete phrase read in conjunction with the entire statutory scheme means the sought after information from a police officer's personnel file will only be used in a court proceeding in which it has been shown under the law, i.e., under the "applicable" Evidence Code sections, that the information is relevant to a particular defendant's defense in a specific case.[19] The *262 Legislature was well aware of the carefully balanced statutory scheme it had enacted in 1978 and the need to preserve the confidentiality of police personnel records under Penal Code section 832.7 unless limited disclosure is ordered after adherence to the motion and hearing requirements of Evidence Code sections 1043 and 1045. (See City of Santa Cruz, supra, 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222; Rosales v. City of Los Angeles (2000) 82 Cal.App.4th 419, 424-427, 98 Cal.Rptr.2d 144 (Rosales).) Our construction comports with the overall legislative intent in the enactment of such statutory scheme. It also is consistent with "the whole purpose behind the[se] Penal and Evidence Code provisions to provide disclosure in civil or criminal proceedings [only] where the moving party shows the information sought is material to the subject matter involved in the pending litigation. [Citations.]" (Rosales, supra, 82 Cal.App.4th at p. 427, 98 Cal.Rptr.2d 144.)
Further, our interpretation that the protective order mandated by subdivision (e) of Evidence Code section 1045 pertains only to the same case in which it is sought under "applicable law" harmonizes the entire statutory scheme and retains its effectiveness. (People v. Pieters, supra, 52 Cal.3d at pp. 898-899, 276 Cal.Rptr. 918, 802 P.2d 420.) In contrast, the defendants' interpretation cannot be harmonized with the confidentiality of police officer personnel file provisions of Penal Code section 832.7 and the explicit procedural steps in Evidence Code sections 1043 and 1045, subdivisions (a) through (c) for the release of those records or information contained within them. Rather defendants' construction would render meaningless the already thorough legislative attention given the competing interests involved in enacting the statutory scheme for Pitchess discovery.
As noted earlier, the trial court erred when it agreed with defendants that a protective order limiting use of the disclosed information to the instant case was invalid. Since the court, as we have explained, has both broad discretionary and mandatory duties to issue a protective order in any particular case, the court on remand should fashion an appropriate protective order for the information it found relevant for disclosure in this case on November 6, 2000, requiring that such information may only be used in this case and that it may not be disclosed to any person not involved in the prosecution or defense of this case.

F. The People's Standing
The court also precluded the People from commenting on the propriety and scope of a protective order below, suggesting the prosecutor had no right to be heard on the issues regarding the discovery of information in police personnel files. Although the Evidence Code expressly provides only that the individual police officer whose records are sought and the agency having custody of such records, both of which are represented here by the City, are entitled to notice of the Pitchess motion, it can be inferred that the People, represented by the district attorney, as a party to the criminal action in which the Pitchess motion was brought, are entitled to both notice of the motion and to be heard during the hearing on the motion. (See Code of Civ. Proc., § 1005, subds. (a)(6) & (b); Evid.Code, § 1043, subd. (a); Pen.Code, § 684; see also Traverso v. People ex rel. Dept. of Transportation (1993) 6 Cal.4th 1152, 1164-1166, 26 Cal.Rptr.2d 217, 864 P.2d 488.)
Article I, section 29 of the California Constitution provides that the "People of the State of California" have the right to due process of law in a criminal *263 case. (Adopted by Initiative (Prop. 115) at the June 5, 1990, Primary Election, operative June 6, 1990.)[20] "To assure due process, open proceedings involving the participation of both parties are the general rule in both criminal and civil cases." (Dept. of Corrections v. Superior Court (Ayala) (1988) 199 Cal.App.3d 1087, 1092, 245 Cal.Rptr. 293. (Ayala)) Due process in criminal matters "generally includes notice, [citation] presence and a hearing." (People v. Youngs (1972) 23 Cal.App.3d 180, 184, 99 Cal.Rptr. 901, distinguished on other grounds in People v. Vickers (1972) 8 Cal.3d 451, 459-62, 105 Cal.Rptr. 305, 503 P.2d 1313.) Thus, "`[i]n [a criminal] adversary proceeding where an order may affect the rights of an adverse party, notice must be given to protect the adverse party's right to be heard on the issue as a matter of due process of law.'" (Ayala, supra, 199 Cal.App.3d at p. 1092, 245 Cal. Rptr. 293.)
Here, the People were properly given notice of the Pitchess motion and hearings but were not permitted to be heard. Contrary to the court's conclusion, the prosecutor has a strong and specific interest in how a court rules on a Pitchess motion. Regardless of the ruling, the prosecution can be affected. If the court grants disclosure of material from police personnel files and the defendant obtains admissible evidence to use at trial, such may affect the outcome of the People's case against the defendant. The People may be required to respond to any evidence released from the officer's file and need access to such material as is disclosed to the defense so that the prosecution may responsibly prepare its case. If the court denies the motion and its decision is found to be improper on appeal, the conviction may be reversed. (See, e.g., People v. Memro, supra, 38 Cal.3d at pp. 684-705, 214 Cal.Rptr. 832, 700 P.2d 446; Hustead, supra, 74 Cal.App.4th at pp. 418-419, 87 Cal.Rptr.2d 875; People v. Gill, supra, 60 Cal.App.4th at p. 750, 70 Cal.Rptr.2d 369.) Moreover, "[w]ithout the presence of the adversary party [to the criminal proceeding,] the court [may have] a shortage of factual and legal contentions on which to base its decision" (Ayala, supra, 199 Cal. App.3d at p. 1092, 245 Cal.Rptr. 293), which may also affect the outcome of the motion and subsequently the trial. Because the result of a Pitchess motion may affect the People's case, as the adverse party in the criminal action in which the discovery is sought, due process requires the People be entitled to be present and to be heard in the public portions of the motion.
In sum, it was error for the court to preclude the prosecutor from speaking at the court hearings on the Pitchess motion. On remand, the court is to provide the prosecutor due process of the law with regard to the propriety and scope of the protective order to be issued in this case.

DISPOSITION
Let a writ of mandate issue directing the superior court to vacate its order of November 15, 2000, and to reenter its November 6, 2000 order, and to fashion a protective order consistent with the views expressed in this opinion. This decision will become final as to this court 10 days *264 after it is filed. (Cal. Rules of Court, rule 24(d).)[21] At that time, the stay issued by this court on December 12, 2000, will be vacated.
WE CONCUR: HALLER, J., McINTYRE, J.
NOTES
[1] Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (Pitchess).
[2] In part, Phillips's report stated: "During my conversation with Alford, I asked him if he had any identification on him. He told me he had only been in San Diego for 9 months and his wallet had been stolen. He told me he is from Philadelphia and had an I.D. card from [there]. I asked him for his name and date of birth and he told me Phillip Brown 10-21-68 .... He also assured me he had never been arrested.... [¶] ... [¶] I went back to our car to conduct a records check and I was not able to find anything from California or Pennsylvania with the name and date of birth Alford had given me.... I believed [he] was giving me false information. I walked back and asked [him] if he had anything on him at all with his name of it. Alford said he did not. I asked him if he had anything illegal on him and he told me that he did not. I asked him if I could check him for an I.D. or illegal contraband and he turned his back to me and held both of his arms straight out. Alford seemed to be giving me non-verbal consent to search his person. [¶] Prior to searching Alford, I again asked, `Is it alright to search you for anything illegal then?' Alford hesitated and then stated, `well, I'd rather you not.' Due to the area's high narcotic activity problems, the fact that I believed he was lying about his identity, Love's admitted priors for gun offenses, and because both Love and Alford both seemed nervous (quivering lips and shaking voice as Alford spoke) I decided to pat Alford down for weapons for our safety, the safety of the covering officers and the safety of both Alford and Love."
[3] According to Love, as he was parking the car in front of a mini-mart, Alford told him a police car was pulling up behind them. As Love got out of the car and walked toward the store's entrance, two officers stopped him, said they needed to talk and prevented him from entering the store when he said he was in a rush to buy baby formula. Two other officers joined Morales and Phillips in confronting fronting Love about his license, registration and insurance. When Love gave the officers his license and car rental contract, they ran a records check, discovering he had a prior record, but was not currently on probation or parole. Morales gave Love back his documents and told him he was free to go. During this exchange, Phillips spoke with the other officers, while Alford stood by the rental car smoking a cigarette and talking with a female passerby. Love then went into the store to buy the baby formula.

When Love walked back to his car, Phillips directed Alford to Morales for questioning. Love sat and waited on the car's fender. Both a female officer and then Morales approached Love and told him he needed to come back near the front of the store. At such point, Phillips had searched Alford's clothes, finding drugs, and asked Love "if he knew what this (the drugs) were." When Love said no, he was surrounded by four officers, told to put his hands behind his back and handcuffs were "physically forced" on him. Love told the officers he had nothing to do with whatever they found on Alford and that he did not have a Fourth Amendment waiver. The officers patted Love down and searched his car. Afterwards, Love and Alford were transported to the police station.
[4] The court found that because the procedural errors would have been easily remedied if the current motion were before a motion department rather than a trial department, it would excuse such errors and press forward to conduct the in camera hearing with City's attorney and the custodian present.
[5] The proposed protective order would require "Defendants and their agents: [¶] a. Not to knowingly copy, duplicate, reproduced or authorize another to copy, duplicate, or reproduce the information disclosed from (the officers') personnel files pursuant to the in camera hearing in this case, [¶] b. Not to convey, transfer, publish, distribute, or authorize another to convey, transfer, publish, or distribute the information ordered disclosed from (the officers') personnel files pursuant to the in camera hearing in this case. [¶] c. Use of the information ordered disclosed from (the officers') personnel files is limited to the defense of this criminal matter and you and your attorney, or any other individual shall not utilize it in any other criminal or civil proceeding; and [¶] d. Use of the information ordered disclosed from (the officers') personnel files is limited to you and your attorney of record in this case, and to any experts employed by said attorney, and you and your attorney shall not indulge it, either in writing or orally, to persons not having a need to, or access to (including the media), the disclosed material for any purpose whatsoever, including for the purposes of preparing this matter for trial."
[6] Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
[7] The court precluded the People from making a brief comment, essentially finding it had no interest in the matter before the court.
[8] The court also noted that the recent case of California Highway Patrol v. Superior Court (2000) 84 Cal.App.4th 1010, 101 Cal.Rptr.2d 379 (CHP) supported the position it was now taking.
[9] Subdivision (b) of Evidence Code section 1045 specifically excludes from disclosure: "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit."
[10] Subdivision (c) of Evidence Code section 1045 provides that "where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records .. . which would not necessitate the disclosure of individual personnel records." Subdivision (d) of Evidence Code section 1045 provides for a discretionary protective order when the governmental agency "seasonably" requests and shows good cause for one, while subdivision (e) of that section mandates a protective order in every case where discovery is permitted under Evidence Code section 1043, limiting such discovery to use only in "a court proceeding pursuant to applicable law."
[11] As the court in City of Santa Cruz, stated: "The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under [Evidence Code] section 1043, subdivision (b)'materiality' to the subject matter of the pending litigation and a 'reasonable belief that the agency has the type of information soughtinsure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in [Evidence Code] section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure." (City of Santa Cruz, supra, 49 Cal.3d at p. 84, 260 Cal.Rptr. 520, 776 P.2d 222; see also People v. Jackson (1996) 13 Cal.4th 1164, 1220, 56 Cal.Rptr.2d 49, 920 P.2d 1254 (Jackson).)
[12] The court in City of Santa Cruz also held that because Evidence Code section 1043 contains no requirement of "personal knowledge" on the part of the declarant or affiant, a declaration by counsel on information and belief is sufficient to state facts to satisfy the "materiality" component of that section. (City of Santa Cruz, supra, 49 Cal.3d at pp. 86-89, 260 Cal.Rptr. 520, 776 P.2d 222.)
[13] The high court in City of Santa Cruz also concluded that Evidence Code section 1043, subdivision (b) does not require identification of particular prior complaints, but only the reasonable belief that certain records may contain such earlier complaints. (City of Santa Cruz, supra, 49 Cal.3d at pp. 89-93, 260 Cal.Rptr. 520, 776 P.2d 222.)
[14] The court in Hustead, however, also found that the defendant had not shown sufficient good cause for discovery or in camera review based on a claim of excessive force. (Hustead, supra, 74 Cal.App.4th at p. 416, 87 Cal.Rptr.2d 875.)
[15] Although Alford did not file a written declaration, the court accepted his oral joinder and representation that his declaration would state Alford's version of the facts regarding the incident was the same as Love's and that the police officers were lying about the specifics of the detention, arrests, searches and interviews.
[16] Love and Alford were "not required to furnish additional `foundational facts' about the information [they] sought in [their] motion. [Citation.] Since [they] did not have access to prior complaints about the officers, [they were] not in a position to know whether the complaints in fact established the custom, habit, intent, motive or plan which [they] alleged. (Cf. Pitchess v. Superior Court, supra, 11 Cal.3d at pp. 537-538, 113 Cal.Rptr. 897, 522 P.2d 305.) To require specificity in this regard would place an accused in the Catch 22 position of having to allege with particularity the very information he is seeking. Neither the Evidence Code nor Pitchess was intended to be applied in this manner." (People v. Memro, supra, 38 Cal.3d 658, 684, 214 Cal.Rptr. 832, 700 P.2d 446; see also City of Santa Cruz, supra, 49 Cal.3d at pp. 91-92, 260 Cal.Rptr. 520, 776 P.2d 222.)
[17] Because the defendants did not make a "plausible factual foundation" for allegations the officer used excessive force or acted with racial bias, the court properly denied the Pitchess motion on those grounds.
[18] The Bill Analysis for the Senate Committee on Judiciary, analyzing Senate Bill 1065 as introduced on March 30, 1981, prohibited the use of the discovered Pitchess records "in any proceeding other than those identified in the motion pursuant to [Evidence Code] Section 1043." The Assembly amendment deleted such language and required that "peace officer records may only be used for a court proceeding pursuant to applicable law." (Assem. Amend, to Sen. Bill 1065 (1981-1982 Reg. Sess.) Aug. 2, 1982; Bill Analysis, Senate Dem. Caucus, analysis of Sen. Bill 1065 (1981-1982 Reg. Sess.) Aug. 2, 1982.) The "Enrolled Bill Memorandum to Governor" also stated: "This bill prevents the abuse of such information by providing that records so disclosed may not be used for any purpose other than a court proceeding pursuant to applicable law." (Enrolled Bill Memorandum to Governor dated Sept. 8, 1982.)
[19] Contrary to defendants' representation that the original language referred to a specific case, such merely referred to any proceeding identified in the Pitchess motion under Evidence Code section 1043. Because such specific Evidence Code had already been mentioned in subdivision (e), it would have been redundant to repeat it rather than use "applicable law," to which such language was changed. Defendants fail to recognize that such changed phrase still modifies the designated proceeding which precedes it.
[20] Even before Proposition 115 formalized the People's due process rights, it was recognized that both parties in a criminal action were entitled to due process. (People v. Snyder (1990) 218 Cal.App.3d 480, 492, 266 Cal. Rptr. 915.) Because of such, our Supreme Court in Tapia v. Superior Court (1991) 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434 held that Article I, section 29 of the California Constitution may be applied to any case regardless of the date on which the crime was committed. (Id. at pp. 299-300, 279 Cal. Rptr. 592, 807 P.2d 434.)
[21] See Ng v. Superior Court (1992) 4 Cal.4th 29, 34, 13 Cal.Rptr.2d 856, 840 P.2d 961.