Filed 3/13/13  P. v. Flynn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C069862 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F02146) |
| v. | |
| JAMES FLYNN, | |
| Defendant and Appellant. | |

Defendant, who was like a grandfather to victim F., was found guilty of molesting him nine times over a three-year period.  Defendant appeals from the resulting 24-year prison sentence, raising a number of evidentiary contentions.  Finding the contentions forfeited or lack merit, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A

*The Prosecution*

F.'s mother began dating defendant's stepson when F. was about six or seven years old.  The stepson lived with defendant on a ranch in Galt, and F. spent a lot of time

1

visiting.  Much of the time, F. would watch television in defendant's room with him. Defendant also would take F. shopping and buy F. "everything [he] wanted."  Soon, they began showering naked together almost every Sunday before church.  They also began sleeping together in defendant's bed with the door locked.

The molestation started when defendant told F. that F. "was getting older and that eventually [he] would have to learn how to . . . please a woman."  Defendant said he "was going to show [him] what to do."  Defendant and F. got naked, and defendant had F. orally copulate him.  F. did not think there was anything wrong because he thought defendant was "teaching [him] what he said he was teaching [him]."  On many other occasions, F. would have to stroke defendant's penis as well.  One time, defendant tried to put his penis in F.'s "butt," but F. told him "no," and defendant stopped.  Defendant told F. not to tell anybody about the molests or else F. "would get in trouble."  Defendant stopped molesting F. when he was about 10 or 11.

After F.'s mom and defendant's stepson broke up, defendant continued his presence in the lives of F., his mother, and his sister.  Defendant continued taking F. to church and gave him a gold cross and chain for his first holy communion.  He gave F. and F.'s sister a computer and laptop computer.  He bought F. school clothes and sneakers.  He enrolled F. in soccer and paid for his fees and equipment and attended all his practices and games.  He took F. to Rome to see the pope when F. was 12 years old.

At some point, defendant's visits diminished.  Defendant canceled a cell phone contract for F., which accompanied the cell phone defendant had also bought him.  F. became concerned that defendant's visits were diminishing and he wondered why.

When F. was about 13, he realized what defendant had done was wrong.  When F. was 15, he told his girlfriend he had been molested.  A few days later, he told his mom and his sister.  After telling his family, F. tried to commit suicide by hanging himself by a

2

cord in the garage. His best friend was in the house, and the friend stopped F. He tried to commit suicide because he "just couldn't handle everything that had happened to [him] and what was going on," namely, what defendant had done to him. What put him "over the edge" was also getting in trouble at school and getting into arguments with his mom and sister.

After the suicide attempt, F. made a pretext phone call to defendant. F. started by telling defendant he could not forget what defendant had done to him. Defendant responded, "Well, we -- we -- we really didn't do nothing but remember -- if you remember I told you I didn't -- I don't love you in that way. You know, that's why I -- we -- you know, I had to tell you stop all that stuff. You know?" He said "it wasn't a sexual relationship." Defendant apologized and said he should not have had F. in the shower with him, but there "wasn't the intent." They also "just laid around . . . in the nude but . . . we really didn't do nothing. And if -- and -- and I didn't -- never did love you in that way. It wasn't pursued." Defendant said he didn't want to go to jail or prison. When F. asked him about the "blow jobs," defendant responded, "Oh, no, no, no. I didn't do nothing. I -- I swear. Nothing happened." He admitted what he did was "wrong" but said only that they laid around naked after showering to cool down.

B

*The Defense*

Defendant testified. He did not spend much time with F. at the ranch and most of the time they were not alone. They got closer toward the end of his stepson's relationship with F.'s mother, eventually becoming like grandfather and grandson. Despite their growing closeness, F. did not spend much time in defendant's bedroom because defendant was always watching religious programs. Defendant never slept naked, and he did not do so with F. Twice, F. wandered into the shower when defendant was inside. Both times, defendant scolded him that his behavior was inappropriate and ordered him to get out. As to his statements on the pretext call, they were not as they appeared. When

3

he admitted he was lying naked with F., his definition of naked was not wearing a shirt. He apologized to F. during the phone call because F. was looking for an apology.

In addition to his own testimony, defendant presented the testimony of two character witnesses. ReCinda Greenwood knew defendant because her niece married his stepson. She had seen defendant interact with children on hundreds of occasions, and not once had she seen him act inappropriately. There was no fact that she could learn about defendant that would change her opinion. Suzanna Schuyler was a coworker of defendant's. She believed that he would never harm a child and that the charges he was facing were out of character for him. If she learned that he admitted to showering with a six-year-old boy and lying naked with him, those facts would change her opinion.

DISCUSSION

I

*The Trial Court Properly Admitted F.'s Testimony*

*That He Tried To Commit Suicide*

Defendant contends the trial court erred in admitting evidence F. tried to commit suicide. He argues the evidence was irrelevant victim impact testimony and was highly inflammatory. As we explain, there was no abuse of discretion. (*People v. Vieira* (2005) 35 Cal.4th 264, 292 [standard of review].)

Contrary to defendant's argument, the evidence was relevant to prove a disputed fact, i.e., whether the molests even occurred. Molestation is a crime where one would expect the victim to suffer emotional trauma. Attempting suicide is a manifestation of emotional trauma and, as such, its occurrence here had a tendency in reason to prove that the crime occurred. (See Evid. Code, § 210 [Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."].)

Also contrary to defendant's argument that the probative value of this evidence was substantially outweighed by undue prejudice, the court was well within its discretion

4

to find otherwise. (See *People v. Thomas* (2012) 53 Cal.4th 771, 809 [standard of review].) The evidence of F.'s suicide attempt consumed only a few pages of testimony and was not graphic. It consisted only of F. explaining that he tried to kill himself with a cord, but his best friend stopped him. Moreover, the defense was able to elicit that what caused F. to go over the edge and actually attempt suicide was F.'s troubles at school and arguments with his family, thereby dissipating the idea that the molestation was the only or deciding factor in his attempting suicide.

On this record, the trial court was well within its discretion to admit the evidence, given its relevance in showing the molestation occurred and its minimally prejudicial effect.

## II

### *Defendant's Contentions About The Court's Exclusion Of Evidence Related To The Cell Phone And Defendant Not Visiting F. Were Forfeited*

Defendant contends the court erred in excluding the following two pieces of evidence: (1) F. was abusing the cell phone defendant had bought him; and (2) F. was upset that defendant was not visiting him anymore. Defendant argues the trial court erred because the cell phone evidence was relevant to show F. had a motive to fabricate the molestation allegations, i.e., he was angry with defendant for cutting off his cell phone service. He further contends the evidence F. told defendant he was unhappy defendant had stopped visiting was admissible for the purpose of impeaching F. (who had earlier testified he was not angry that defendant had stopped visiting), and for F.'s motive to fabricate. The People respond that these contentions were forfeited. We agree.

### A

### *The Excluded Testimony*

Defense counsel elicited from defendant that he had bought a cell phone and phone contract for F. to use for "[e]mergency purposes only." Defense counsel also elicited from defendant that he ended up canceling the monthly cell phone contract.

5

Defendant explained it was because F. and his mother were "abusing the bills," but the court struck this explanation in response to the prosecutor's relevancy objections.

Shortly thereafter, defense counsel asked defendant if F. "ever express[ed] any unhappiness to you about the fact that you weren't seeing him anymore?" Defendant responded "[Y]es," but the court struck the answer in response to the prosecutor's hearsay objection.

B

*Defendant's Contentions Were Forfeited*

"As a condition precedent to challenging the exclusion of proffered testimony, Evidence Code section 354, subdivision (a), requires the proponent make known to the court the 'substance, purpose, and relevance of the excluded evidence . . . .' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1178.) For example, in *Ramos*, during the direct examination of a witness, the prosecutor made two hearsay objections to questions regarding the contents of letters the witness received from another person around the time of the crimes. (*Ibid.*) "In response, [the] defendant did not make an offer of proof as to the substance of the anticipated testimony, cite a hearsay exception, or argue a nonhearsay purpose. Accordingly, he failed to preserve the issue." (*Ibid.*)

The same is true here. When the trial court sustained the hearsay objection to the question about the visits, defendant did not cite a hearsay exception, or argue a nonhearsay purpose. When the court sustained the relevancy objection to the answer that defendant cut off cell phone service because F. and his mother were *abusing the bills*, defendant did not argue the evidence was relevant to show why F. would have fabricated the molestation allegations.[1] Contrary to defendant's argument, the simple asking of the

---

[1] The court had admitted evidence defendant cut off the cell phone contract he had bought for defendant. It excluded just the evidence of why. It is not readily apparent that the reason *why* defendant cut off the cell phone contract (as opposed to the simple fact

questions here or the nature of the case did not make the admissibility of these pieces of evidence readily apparent. Accordingly, defendant has forfeited these evidentiary contentions on appeal.

## III

*The Court Was Within Its Discretion In Finding*

*No Discoverable Evidence In F.'s Confidential School Records*

Defendant sought F.'s confidential school records to assist in his defense. The court reviewed those records in camera, found nothing discoverable, sealed those records, and then placed them in the court file. Defendant now requests that we review the sealed records, which we do to determine whether the trial court abused its discretion by ruling that the records produced no discoverable material. (*People v. Gill* (1997) 60 Cal.App.4th 743, 749 [abuse of discretion standard].)

Defendant further "suggests that these records be made available to each party to read at the Court of Appeal under a protective order that if any argument is to be made from them, that they be made under seal until the court orders differently." We decline defendant's suggestion. Given the privacy concerns of a minor such as F. in his school records, the procedure set forth *in People v. Mooc* (2001) 26 Cal.4th 1216, 1232) (where we review the confidential records to determine whether the trial court abused its discretion in finding no discoverable evidence) strikes the necessary balance between a defendant's right to meaningful appellate review and the minor's right to privacy (*id*. at p. 1227).

We have reviewed F.'s school records and conclude they contain no discoverable material. There was no abuse of discretion.

---

that he did) would have given F. any more motive to fabricate the allegations against defendant.

7

DISPOSITION

The judgment is affirmed.


                                                 ROBIE                 , Acting P. J.


We concur:


     MURRAY                   , J.


     DUARTE                   , J.