Filed 9/23/16  P. v. Miller CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIMOTHY TREMAIN MILLER,<br><br>    Defendant and Appellant. | B263971<br><br>(Los Angeles County<br>Super. Ct. No. TA134400) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

We affirm Timothy Tremain Miller's (defendant's) convictions for assault with a firearm and attempting to dissuade a witness from testifying.

## FACTS AND PROCEDURE

### 1. *Assault with a Firearm*

On December 26, 2013, L.I., a former Blood Stone Piru gang member, went to buy food in an area claimed by the Grape Street Crip gang. Defendant "banged on" L.I., meaning defendant asked L.I. "where [he] was from," a way of asking about his gang membership. L.I. responded by asking defendant, "Where you from?" Defendant again asked L.I., "Where you from?" L.I. was afraid of defendant, "slugged" him, and tried to run away. Defendant chased L.I. and shot him, hitting his finger.

### 2. *Attempting to Dissuade a Witness*

On January 4, 2014, defendant asked an unidentified woman to find Melissa because Melissa knew the person who "stole on me [(defendant)]." "Stole on" means being hit without being prepared for it. The same day defendant told an unidentified woman that he would "get ya'll the name."

The discussion between defendant and the unidentified woman was as follows:

"Female: They can't give even you that much time then, they can't do that.

"Male [Defendant]: Ya, I'm good[.]

"Female: Unless, I guess unless the nigga was snitchin or something.

"Male: They got his name on there though. I got to read that shit again. I'll get ya'll the name though.

"Female: Ok."

Five days later a woman told defendant that she had "good news." She explained that defendant's uncle "ran into old dude, that you [(defendant)] supposedly, you know," and "he said he's going to have him write a statement that you weren't that guy that supposedly shot him . . . ." Defendant responded: "That's cool, don't say nothing else, don't say nothing else . . . ."

2

A few days later, Andre Christian (also known as Lowdown) approached L.I. to write a statement.[1] Christian told L.I. he should write the statement to avoid being "more of a snitch."[2] A "snitch" is a gang member who reports that a person has committed a crime. A "snitch" can be killed. L.I. thought that Christian was trying to help him avoid being a "snitch."

At Christian's request, on January 14, 2014, L.I. wrote the following statement: "I am writing this statement so no one can put words in my mouth. I[']ve been hearing rumors about me lying on someone that's incarcerated. I don[']t know who the guy was that I got into an altercation with and never seen him before. I don[']t recall if he was [M]exican or black or even what he looks like." L.I. signed the statement, and it was notarized. When he wrote the statement, L.I. knew it was not true.

The letter was mailed to defendant's attorney on January 30, 2014.

This case was dismissed twice because L.I. could not be located. L.I. was arrested for refusing to testify and was incarcerated for one month.

### 3. Gang Evidence

Defendant had numerous tattoos reflecting his membership in the Grape Street Crips, and it was undisputed that he was a member of that gang. Christian also was a member of the Grape Street Crips.

When asked a hypothetical with facts similar to the present case, Officer Francis Coughlin opined that the crimes were for the benefit of the Grape Street Crips.

---

[1] Christian was a gang intervention worker employed by the City of Los Angeles. Detective Daniel Pearce testified that Christian was not working in the scope of that position when he asked L.I. to draft the letter sent to defendant's attorney.

[2] L.I. was known as a "snitch" because he previously had testified against a member of his former gang in a murder trial. A gang member who testifies against a fellow gang member can no longer be part of the gang.

3

### 4. *Conviction and Sentence*

Defendant was convicted of assault with a firearm (Pen. Code, § 245, subd. (a)(2).)[3]  Jurors found the gang enhancement (§ 186.22, subd. (b)) and personal use of a firearm (§ 12022.5) enhancement true.  Defendant also was convicted of attempting to dissuade a witness from testifying (§ 136.1, subd. (a)(2)).  With respect to that crime, jurors found the gang enhancement true.  Defendant was sentenced to an aggregate term of 13 years in state prison.

## DISCUSSION

Defendant argues that the trial court coerced a verdict and that no substantial evidence supported his conviction for attempting to dissuade a witness.  His arguments lack merit.

### 1. *The Verdict Was Not Coerced*

As we shall explain after providing additional background, the record belies defendant's contention that the trial court coerced the jury's verdict.

### A. *Background*

The court instructed jurors with CALCRIM No. 359 as follows:  "The defendant may not be convicted of any crime based on his out-of-court statements alone.  You may only rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows the charged crime was committed.  [¶]  That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed.  [¶]  The identity of the person who committed the crime may be proved by the defendant's statements alone.  [¶]  You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt."

On November 21, 2015, just before 3:00 p.m., jurors were charged with deliberating.  They were asked to deliberate for about an hour and to return at 9:30 the next morning.  The next morning about 11:25 a.m., jurors asked for readback of L.I.'s testimony.  At approximately 3:40 p.m., jurors sent the following note:  "We have

---

**3**      Undesignated statutory citations are to the Penal Code.

deliberated and the vote is 10-2 for guilty. Two of the jurors are uncomfortable with voting guilty because the instructions say a decision cannot be made solely on the jail house phone conversations per instruction 359." The court responded as follows: "Please read Instruction #359 again, paying specific attention to paragraphs 1 + 2 of that instruction. [¶] Also, do not reveal where you stand on the verdict or what your vote is unless I specifically ask you to do so."

The next day at 10:40 a.m. jurors sent a note stating, "[w]e are still unable to reach a verdict. What should we do next?"

The court told jurors: "Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts. Please consider the following suggestions.

"Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views. Each of you must decide the case for yourself and form your own—form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors.

"It is your duty as jurors to deliberate with the goal of reaching a verdict, if you can do so, without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you [or] other [jurors]—want to reach a verdict. Both the People and the defendant are entitled to the individual judgment of each juror.

"It is up to you to conduct or decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective. Let me know if I can do anything to help you further such as give an additional instruction or clarify instructions that I have already given you or further argument of counsel on a particular issue.

"As you know, we have spent seven days trying [this case]. [A]ccording to my calculations, you have spent about two to three hours deliberating in this case . . . .

"In light of the amount of time that [it] has taken [to try] this case, the trial, I don't believe you spent enough time deliberating this case. Deliberations should be substantial,

5

meaning meaningful and enough time given.  Two to three hours on a case that took, I believe, four to—little bit over four days in terms of evidence being presented, in my opinion, is not enough for deliberations.

"From the note that we received on Friday afternoon, it may be helpful to the jury if I, with assistance of counsel, can clarify a particular jury instruction or instructions or if the attorneys get an opportunity to reargue a particular issue.  The attorneys are agreeable to doing that if it will help the jury reach a verdict.

"Or another thing that I can do is, if you need read back of certain testimony, I can have the court reporter's record or notes be read back to you."

*B.  Analysis*

Emphasizing that the court inadvertently learned how the jury was leaning and that the court told jurors that they had not deliberated long enough, defendant argues that the court's requirement that jurors continue deliberating coerced jurors into reaching a verdict.  Defendant's argument is meritless.

Section 1140 states that, "[e]xcept as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

Our Supreme Court has explained that the trial court has discretion whether to declare a hung jury or order further deliberations.  (*People v. Bell* (2007) 40 Cal.4th 582, 616 (*Bell*), disapproved on another ground in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.)  " 'Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived " 'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.' " ' " (*Ibid.*) "Coercion occurs where 'the trial court, by insisting on further deliberations, expresse[s]

6

an opinion that verdict should be reached.' " (*People v. Peoples* (2016) 62 Cal.4th 718, 783.)

In contrast to defendant's argument, our Supreme Court has held that the fact the trial court was aware jurors voted 11 to one for conviction and required them to continue deliberating did not support the defendant's argument that the verdict was coercive. (*Bell, supra*, 40 Cal.4th at p. 617.) The high court explained: "Despite the 11-to-1 split, the trial court could reasonably believe further deliberations would lead to a unanimous understanding of the case among jurors." (*Id*. at p. 618.) Just as in *Bell*, here the trial court could reasonably have believed further deliberations would lead to a unanimous verdict, and the outcome indicated that the jurors fulfilled that expectation. It is not inherently coercive for the court to order jurors to continue deliberating after learning of their numerical split. (*People v. Pride* (1992) 3 Cal.4th 195, 265.)

Moreover, the court's entire statements to jurors cannot reasonably be understood as having coerced a verdict. (See *People v. Peoples, supra*, 62 Cal.4th at p. 783 [considering the totality of the circumstances to evaluate whether trial court's statements were coercive].) The court did not instruct a minority of jurors to rethink their position. Instead, the court instructed all jurors to rethink their position. The court did not require jurors reach a verdict. Instead it instructed them to reach a verdict only if they could do so without surrendering each juror's individual perspective. Telling jurors to deliberate with the goal of reaching a verdict without pressuring jurors to relinquish their individual perspectives is not coercion. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1121.) Telling jurors that they ought to be able to arrive at a verdict could not be understood to urge a particular verdict. (*People v. Burton* (1961) 55 Cal.2d 328, 357.) Finally, contrary to defendant's argument, the fact that the trial court told jurors that they had spent little time deliberating and that they should deliberate longer was not coercion. (*People v. Peoples, supra*, at p. 783 [telling jurors that 21.5 hours of deliberation was a " 'drop in the bucket' " was not coercive]; *People v. Gill* (1997) 60 Cal.App.4th 743, 748 [court's comments to jurors that they spent very little time deliberating and should spend more time deliberating were not coercive].)

7

## 2. *Substantial Evidence Supported Defendant's Conviction*

Defendant was convicted of attempting to dissuade a witness in violation of section 136.1. Subdivision (a)(2) of that statute defines the crime as "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Defendant argues that the conduct of dissuading L.I. cannot be attributable to him. We conclude that substantial evidence supported the jury verdict.

"[O]ur role on appeal is a limited one. 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Here, substantial evidence supported the jury's verdict. Based on defendant's recorded conversations a reasonable juror could conclude that defendant assisted in obtaining L.I.'s written statement. Specifically defendant requested someone find Melissa to learn L.I.'s identity and later stated that he would independently learn L.I.'s identity. Five days later, an unidentified person reported to defendant that L.I. had been found and would give a statement. Defendant warned the speaker not to say anything else, suggesting a consciousness of guilt. Shortly after that conversation, Christian approached L.I. and obtained his falsified statement, which was then sent to defendant's attorney. The inference that defendant encouraged, supported and assisted in obtaining the evidence is readily inferable from his recorded conversations asking for assistance in

8

identifying L.I.  This evidence supported the jury's conclusion that defendant aided and abetted the attempted dissuading of L.I. from testifying.

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

9